UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALUM FUND, LLC and AFLX, LLC, a Florida limited liability company,

    Plaintiffs,

v.    Case No.:  2:24-cv-184-JLB-KCD

GREATER NEVADA CREDIT UNION, GREATER NEVADA COMMERCIAL LENDING, LLC, SUGAR TOWN, LLC, ATIO USA, LLC, LUCIO MEDOLAGO ALBANI, and AEGIS VENTURE FUND, LLC,

    Defendants.
_____/

# **ORDER**

Before the Court is Plaintiffs Alum Fund, LLC, and AFLX, LLC's Motion to Remand to State Court. (Doc. 14.)[1] Defendants Greater Nevada Credit Union and Greater Nevada Commercial Lending, LLC (collectively, "GNCU") have responded in opposition. (Doc. 23.) For the reasons stated below, Plaintiffs' motion is granted.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

## I. Background

This lawsuit concerns a dormant aluminum recycling facility in Hendry County. In short, the parties are fighting over ownership of the recycling facility and several alleged security interests in its equipment. Unfortunately, this short recitation of the dispute won't do here. The Court must dive into the weeds to address whether remand is appropriate. The facts below are taken from the amended complaint (Doc. 8), the briefing (Docs. 14, 23), and the Affidavit of Steven G. Anderson as Plaintiffs' representative (Doc. 14-1).[2]

### A. ATIO and Sugar Town

In 2016, Defendants ATIO and Sugar Town joined together to build the recycling facility ("Facility"). It was intended to be a state-of-the-art plant and major regional employer. The Facility was to be built on property owned by Sugar Town and leased to ATIO.

To finance the project, ATIO procured a loan from GNCU for $10 million, which was secured by an interest in certain equipment, machinery, and other fixtures that were integrated into the Facility. Sugar Town separately executed a promissory note for approximately $4 million. The note was secured by a mortgage that eventually landed with Seacoast National Bank.

---

[2] The Court must consider the affidavit. *See Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.").

ATIO and Sugar Town also secured a loan from Aegis Venture Fund, LLC for working capital. But these investments ultimately proved insufficient to sustain the business. ATIO and Sugar Town eventually defaulted on their obligations to their lenders, including GNCU and Seacoast. And Seacoast initiated foreclosure proceedings.

### B. ABC Proceedings

Because of these financial problems, in 2021, Sugar Town and ATIO started two consolidated insolvency actions in Florida state court, styled *In re Assignment for the Benefit of Creditors of ATIO USA, LLC and Sugar Town, LLC*, Case Nos. 2021-CA-00499 and 500, ("ABC Proceedings"). They assigned their ongoing concerns and assets to Marc P. Barmat, who acted as a fiduciary throughout the insolvency process.

The ABC Proceedings centered on the liquidation of Sugar Town and ATIO's assets, including the Facility. As the largest creditor of ATIO, GNCU was aware of the ABC Proceedings before they started and participated in the process by trying to orchestrate a workout where potential investors would assume GNCU's claim against ATIO.

GNCU also tried to acquire Seacoast's debt position. Allegedly as an act of good faith, and at the request of GNCU, Seacoast's foreclosure action was stayed. But negotiations ultimately failed, and in May 2022, Seacoast sold its mortgage liens and security interest to Avalon Capital Management, LLC,

3

which then transferred the same to Plaintiff AFLX. AFLX is thus the holder of the note and mortgage as successor-in-interest to Seacoast. AFLX's ownership is evidenced by its acquisition of Seacoast's senior position, but also a quit-claim deed.

Through a set of transactions during and after the ABC Proceedings, AFLX now owns the Facility and its integrated fixtures, with Alum Fund holding the balance of the property. In other words, Plaintiffs collectively own the Facility and property where it sits.

### C. Foreclosure Action

As mentioned, Seacoast began foreclosure proceedings on its mortgage and security interests. (Doc. 1-4 at 5-20.) This makes sense because the ABC Proceedings sought a bidder for the Facility. Thus, a clean title was needed. Seacoast sued Sugar Town and Barmat, as well as Sugar Town's principals who guaranteed the loan: ATIO, Mimosa Holdings, Ltd., Lucio Medolago Albani, Gino Brenzini, and Guido Fuasto Gerosa.

GNCU was not named in the initial complaint. (Doc. 1-4 at 5-20.) GNCU surmises this was because it held a security interest against ATIO, and not Sugar Town. But Plaintiffs assert that "GNCU was not initially included as a party to the Foreclosure Action because any interest that GNCU may have previously held in any or all of the Borrower Property had lapsed by the time the Foreclosure Action was initiated." (Doc. 14 at 7; Doc. 14-1 ¶ 42.)

Following the substitution of AFLX for Seacoast, the foreclosure suit again sat dormant.

### D. Slander of Title Action

Plaintiffs claim that during and after the ABC Proceedings, and unbeknownst to them, GNCU was working with other third parties to either sell the Facility and/or assign its claim against ATIO. After months of trying to reach an agreement with GNCU, Plaintiffs say it became apparent that GNCU was merely trying to delay the foreclosure action.

Thus, in March 2023, Plaintiffs filed a state-court suit ("Slander of Title Action") against GNCU and Patrick B. Langford in his capacity as the Hendry County Tax Collector. Plaintiffs alleged claims against GNCU for declaratory relief pertaining to lien priority and damages resulting from GNCU's slander of title. Plaintiffs also sought expedited consideration because of a pressing issue—AFLX's Air Construction Permit, which is required to run the Facility, was set to expire on December 31, 2023. Plaintiffs claimed that GNCU's misrepresentations about its interests were preventing them from bringing the Facility online.

GNCU removed the Slander of Title Action to this Court (case no. 2:23-cv-1159-JLB-KCD) in what Plaintiffs claim was a delay tactic to avoid a summary judgment hearing. According to Plaintiffs, GNCU did not want to proceed with summary judgment because it would have let AFLX preserve the

5

permit. Because of removal, and the resulting cancellation of the summary judgment hearing, the permit lapsed.

According to Plaintiffs, the permit expiring changed everything. This is because they are no longer confident the Facility can reopen, which leaves limited options. Plaintiffs have had to explore selling the Facility. To convey clean title in a potential sale, Plaintiffs say they will need to foreclose out all liens and other interests. And this includes GNCU's claims because they allegedly cloud the title.

The Slander of Title action has been actively litigated, both here and in state court. Plaintiffs sought to remand the case back to state court, but its motion was denied.

### E. The Foreclosure Action Revived

To allegedly obtain a clean title to the Facility, Plaintiffs returned to the dormant foreclosure action and filed an amended complaint that included GNCU. (Doc. 8.) Plaintiffs' goal is to advance the "Foreclosure Action as rapidly as possible [and] mitigate the substantial damages that continue to accrue as the Plaintiffs are precluded from utilizing the Facility." (Doc. 14 at 11; Doc. 14-1 ¶ 32.) It was necessary to add GNCU, according to Plaintiffs, because of the "erroneous assertions that [it] owns or holds a senior interest in the Collateral." (Doc. 14 at 11; Doc. 14-1 ¶ 33.)

The amended foreclosure complaint seeks (i) breach of promissory note as against Sugar Town; (ii) foreclosure of AFLX's mortgage lien as against GNCU, Aegis, Sugar Town, and ATIO; (iii) foreclosure of AFLX's security interests as against GNCU, Aegis, Sugar Town, and ATIO; (iv) assignment of leases of rents as against Sugar Town; (v) breach of guaranty as against each Albani and ATIO; (vi) declaratory relief regarding the ownership rights and interests of the Plaintiffs and GNCU as to the property; and (vii) judgment for slander of title against GNCU regarding its continued false assertions to third parties that it either owns or holds a senior interest in the Facility. (Doc. 8.)

GNCU, Aegis, ATIO, and Sugar Town were served in February 2024. GNCU then timely removed the foreclosure action here based on diversity jurisdiction.

**F.  Removal**

The amended foreclosure complaint lacks diversity on its face. Plaintiffs and many of the defendants (Sugar Town, ATIO, Albani, and Aegis) are Florida citizens. Nevertheless, GNCU claims diversity can be found because of fraudulent joinder. (*See* Doc. 1.) In the notice of removal, GNCU alleges that Plaintiffs are acting in bad faith. This is evident, it says, because as soon remand was denied in the Slander of Title Action, Plaintiffs amended the foreclosure complaint to include those claims here. "Put bluntly, Plaintiffs are forum shopping. Plaintiffs are attempting to defeat federal jurisdiction by

7

grafting claims that are pending in federal court onto an amended state court complaint." (Doc. 1 at 7.)

## II. Legal Standard

A case filed in state court may be removed if it could have originally been brought in federal court. 28 U.S.C. § 1441(a). For diversity jurisdiction, as alleged here, the amount in controversy must exceed $75,000 and the dispute must be between citizens of different states. *Id.* § 1332. Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996). The removing party bears the burden of proving that federal jurisdiction exists and that removal was proper. *Leonard v. Enter. Rent-a-Car*, 279 F.3d 967, 972 (11th Cir. 2001). Because removal jurisdiction raises significant federalism concerns, federal courts must construe removal statutes strictly and resolve all doubts about jurisdiction in favor of remand to state court. *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Establishing fraudulent joinder is a heavy burden—there must be clear and convincing evidence. *See Pacheco de Perez*, 139 F.3d at 1380. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of

8

the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Crowe v. Coleman*, 113 F.3d 1537, 1538 (11th Cir. 1997). The determination of whether a resident defendant has been fraudulently joined must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. *Pacheco*, 139 F.3d at 1380.

When considering a motion to remand, the court must not "weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id.* In other words, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287. And finally, the facts must be evaluated in a light most favorable to non-movant. *Pacheco*, 139 F.3d at 1380.

## III. Discussion

GNCU presses two arguments to prove jurisdiction: (1) under the doctrine of fraudulent misjoinder, the Court may disregard the citizenship of the Florida defendants and find that diversity jurisdiction exists; and (2) Plaintiffs have no genuine intent in pursuing any claims to judgment against the Florida defendants. (Doc. 23 at 9.) In response, Plaintiffs argue they have alleged meritorious state-law claims against the Florida defendants whose presence destroys diversity.

### A. Intent to Pursue Claims Against the Florida Defendants

Starting with the latter argument, GNCU claims the procedural history of this case proves that Plaintiffs have no genuine interest in pursuing claims against the Florida defendants. Federal courts have routinely dismissed non-diverse defendants and retained jurisdiction over cases in which "the plaintiff's collective litigation actions, viewed objectively, clearly demonstrate[d] a lack of good faith intention to pursue a claim to judgment against [the] non-diverse defendant." *Faulk v. Husqvarna Outdoor Prod. N.A., Inc.*, 849 F. Supp. 2d 1327, 1330-31 (M.D. Ala. 2012). This species of fraudulent joinder must be balanced against a plaintiff's "absolute right" to pursue claims against any jointly liable defendant, "whatever the reason that makes him wish to assert the right." *See Triggs*, 154 F.3d at 1291. Thus, "a plaintiff's motivation for joining a defendant is not important as long as the plaintiff has the intent to pursue a judgment against the defendant." *See id.*

GNCU emphasizes that this foreclosure case was dormant for years, with Plaintiffs making no effort to serve the Florida defendants. And it was only after the Court denied remand in the Slander of Title Action that Plaintiffs showed any real interest in prosecuting the foreclosure.

The Court cannot say Plaintiffs have no intention of pursuing a judgment against the Florida defendants here. While the procedural history of this case could be viewed as GNCU suggests, it is equally plausible that the foreclosure

10

proceedings lay dormant for so long because of a confluence of events concerning the recycling facility. Plaintiffs offer a persuasive recitation of the facts and circumstances that influenced their decision to pause the foreclosure process until now. (*See* Doc. 14-1.)

According to Plaintiffs, they intended to reopen the Facility after GNCU's lien was resolved through the Slander of Title Action. But once that case was delayed by removal and the air permit expired, Plaintiffs were left with no choice but to pursue other options with the Facility, including a sale. To convey clean title, Plaintiffs needed to foreclose out all liens and other interests. Thus, they returned to the foreclosure action and added GNCU, who claims to hold an interest in the collateral. From a procedural standpoint, it makes sense that the Florida defendants, all of whom are in default under the terms of the Seacoast loan or have a junior interest in the collateral, are included in the foreclosure action. Indeed, the Title Report confirms that Sugar Town, ATIO, and Aegis are all necessary parties to the foreclosure relief sought. (*See* Doc. 14-1 at 61.)

Put simply, Plaintiffs arguably restarted the foreclosure proceedings to acquire clean title to the Facility before any sale. Against this backdrop, the Court cannot say they lack a "good faith intention to pursue a claim to judgment against" the Florida defendants. *Faulk*, 849 F. Supp. 2d at 1331.

### B. Fraudulent Misjoinder

In *Tapscott v. MS Dealer Serv. Corp.*, the Eleventh Circuit found that the "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." 77 F.3d 1353, 1359 (11th Cir. 1996). Misjoinder is "a species of fraudulent joinder, pursuant to which the citizenship of misjoined parties may be disregarded." *Ash v. Providence Hosp.*, No. CIV. A. 08-0525-WS-M, 2009 WL 424586, at *8 (S.D. Ala. Feb. 17, 2009). Fraudulent misjoinder involves "a purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal, and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard provided under Rule 20 of the Federal Rules of Civil Procedure." *Stone v. Zimmer, Inc.*, No. 09-80252-CIV, 2009 WL 1809990, at *2 (S.D. Fla. June 25, 2009); *see also Spinnaker Cove Condo. Ass'n, Inc. v. Affordable Exterminating, Inc.*, No. 8:21-CV-2379-JLB-AEP, 2021 WL 5881677, at *2 (M.D. Fla. Dec. 13, 2021).

But importantly, mere misjoinder under Rule 20 is not fraudulent misjoinder. *Ash*, 2009 WL 424586, at *8. Misjoinder is fraudulent only in "egregious circumstances." *Balgord v. Pleasure Island Land Co.*, No. CIV.A. 14-00431-KD-B, 2015 WL 180154, at *4 (S.D. Ala. Jan. 14, 2015); *see also Bruner v. Am. Honda Motor Co.*, No. CV 15-00319-N, 2015 WL 5050050, at *4

12

(S.D. Ala. Aug. 25, 2015) (describing fraudulent misjoinder as "so egregious as to 'border on a sham'"). "[T]he distinction between misjoinder and 'egregious' fraudulent misjoinder is not well-defined." *Estate of Carter by & through Carter v. SSC Selma Operating Co. LLC*, No. 2:19-cv-00431-JB-M, 2020 WL 3429040, *3 (S.D. Ala. June 23, 2020). Whether misjoinder is egregious will depend on the degree of connection, or lack thereof, between the non-diverse party and the controversy. In an egregious misjoinder, "there is such a lack of connection between the claims that not only is joinder improper, but it is clearly or obviously so." *Luke v. O'Hearn*, No. 4:13-CV-535 CDL, 2014 WL 1153786, at *2 (M.D. Ga. Mar. 20, 2014).

> Rule 20 allows permissive joinder of defendants as follows:
>
> All persons ... may be joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a). If defendants have been misjoined under this standard, Rule 21 allows for severance of those defendants:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

The facts here do not present an egregious misjoinder of non-diverse defendants that "border[s] on a sham." *Raintree Vill. Condo. No. 10 Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, No. 8:20-CV-546-MSS-AAS, 2020 WL 13885248, at *3 (M.D. Fla. Oct. 26, 2020). As mentioned, the Florida defendants belong in this foreclosure action and have been named from the start. And there is a plausible nexus between the claims against the Florida defendants and the claims against GNCU. This case concerns Plaintiffs' efforts to convey clean title in a potential sale of the Facility by foreclosing out all liens and other interests. GNCU is a player in these efforts because Plaintiffs claim that GNCU continues to cloud title asserting ownership and lien rights in the Facility property. (*See* Doc. 8 at 25-26.) While GNCU may not prove a necessary party to the foreclosure proceedings, the Court cannot say Plaintiffs claims are a sham.

Turning away from the Florida defendants and focusing on its own citizenship, GNCU claims it was not properly joined here because this case is solely about Plaintiffs' interests in property formerly owned by Sugar Town, and it has no interest in such property. (Doc. 23 at 13-14.) But this argument attacks the pleadings and goes to the merits, which the Court does not consider when assessing remand. *See Pacheco*, 139 F.3d at 1380 ("[F]ederal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is

14

an arguable one under state law."). Indeed, GNCU made this point in its most recent motion to dismiss. (Doc. 20.)

Along the same lines, GNCU argues that Plaintiffs are improperly trying to litigate their slander of title claims in state court after losing the motion to remand. But this argument, even if true, doesn't change the result. Setting aside any duplicative slander of title claims, the foreclosure claims against GNCU were arguably not misjoined, as discussed above, and thus remand is proper.

### C. Attorney's Fees and Costs

Under 28 U.S.C. §1447(c), the remanding court may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Plaintiffs ask for such relief, asserting that GNCU lacked an objectively reasonable basis to remove the case. (Doc. 14 at 22-23.) The Court denies this request. As GNCU points out, an award of attorney's fees is not automatic on remand. (Doc. 23 at 17-18.) Rather, courts have discretion to award attorney's fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *MSP Recovery Claims, Series LLC v. Hanover Ins. Co.*, 995 F.3d 1289, 1296 (11th Cir. 2021). GNCU's removal attempt, though unsuccessful, was objectively reasonable. Given the procedural history of this case, there is at least a colorable argument that Plaintiffs joined GNCU here to litigate their slander of title claims in state

court following the unfavorable remand order. Thus, in its discretion, the Court finds that an award of attorney's fees and costs is inappropriate.

### D. Without Prejudice

Finally, the GNCU asks that any remand be "without prejudice to their alternative remedies regarding Plaintiffs' forum shopping." (Doc. 23 at 18.) Essentially, they ask the Court to enjoin the duplicative state court litigation. But GNCU has already filed a motion to this effect in the Slander of Title Action. Thus, the Court will consider the arguments there, rather than entering a remand without prejudice (a position for which GNCU cites no authority in support).

Accordingly, it is now **ORDERED**:[3]

1. Plaintiff's Motion to Remand (Doc. 14) is **GRANTED**.

2. If no objections are filed within 14 days of this order, which is the time allotted under Fed. R. Civ. P. 72, the Clerk is directed to remand this case to state court by transmitting a certified copy of this Order to the clerk of court for the Twentieth Judicial Circuit in and for Hendry County, Florida. The state-court case was previously captioned 2022-CA-278.

---

[3] Because a motion to remand does not address the merits of the case but merely changes the forum, it is a non-dispositive matter appropriately handled by order. *See Franklin v. City of Homewood*, No. CIV.A. 07-TMP-006-S, 2007 WL 1804411, at *3 (N.D. Ala. June 21, 2007).

3. Following remand, the Clerk shall terminate any pending motions, terminate all deadlines, and close the case.

4. If objections are timely filed, the Clerk is directed to hold disposition until ordered by the District Judge.

**ENTERED** in Fort Myers, Florida on June 12, 2024.

_____
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record